1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DENTAL MONITORING SAS,

        Plaintiff,

    v.

ALIGN TECHNOLOGY, INC.,

        Defendant.

No.  C 22-07335 WHA

**ORDER RE MOTION TO DISMISS**

## INTRODUCTION

In this patent infringement action, alleged infringer moves to dismiss patent owner's direct, willful, and indirect infringement claims.  For the following reasons, the motion is **GRANTED IN PART** and **DENIED IN PART**.

## STATEMENT

Patent owner Dental Monitoring SAS was founded in 2014 and provides "remote monitoring orthodontics, as well as visual and AI-powered orthodontics."  It seeks to eliminate time-consuming, costly, and unnecessary trips to the dentist by enabling patients to photograph their own mouths with their smartphones and enabling dentists and orthodontists to accurately analyze those photographs.  According to Dental Monitoring, its services and products can "identify well over 100 gingival or dental issues, as well as orthodontic-related clinical or treatment issues, such as patient compliance, occlusion problems, or failures with orthodontic equipment" (Compl. ¶ 9).

Dental Monitoring now has more than 200 pending and issued patents, including the three patents-in-suit, U.S. Patent Nos. 10,755,409; 11,049,248; and 11,109,945.  The patent applications were filed in 2018, and the patents issued between 2020 and 2021.  The '409 patent and the '248 patent ostensibly simplify the analysis of images used to provide dental treatment by reciting new and improved methods that employ "neural networks" and "deep learning devices" for acquiring and analyzing such images.  The '409 patent also ostensibly provides a new and improved method of "embedded monitoring" for the acquisition of these images by determining whether a characteristic of an acquired image meets a particular "setpoint" for that image and otherwise guiding a patient to make adjustments.  Meanwhile, the '945 patent ostensibly provides an improved method for evaluating the shape of an orthodontic aligner worn by a patient, making it easier to evaluate the suitability of the aligner and making this evaluation more reliable (Compl. ¶¶ 15, 22–25).

According to Dental Monitoring, the COVID-19 pandemic drove the need for remote monitoring to explode overnight, with patients, dentists, and orthodontists only wanting to go into an office if it was necessary.  Alleged infringer Align Technology, Inc., a leader in the aligner space with its eponymous "Invisalign" products and a patent-owner in its own right, was purportedly "caught flat-footed" by this change.  Dental Monitoring contends that Align executives had repeated meetings with Dental Monitoring executives to discuss potential future business relationships after the pandemic began but Align ultimately copied Dental Monitoring, "despite express reminders by Dental Monitoring's executives that its technological approaches and solutions were protected by a robust, world-wide patent portfolio" (Compl. ¶¶ 26–28).

In March 2020, Align launched its Invisalign Virtual Care platform, which required a patient to take photos of their teeth (with their aligner on and off) and submit them to their dentist or orthodontist through the My Invisalign app whenever that patient had an aligner change.  In fall 2022, Align announced the launch of its Invisalign Virtual Care AI platform, which it claimed built on its existing platform by incorporating AI-assisted features that help dentists and orthodontists monitor treatment progress based on settings that they can customize

1    (Compl. ¶¶ 31–33; *see* Compl. ¶¶ 34–43).  Shortly thereafter, Dental Monitoring filed its

2    complaint against Align, alleging direct infringement under 35 U.S.C. Sections 271(a) and

3    271(g), indirect infringement under Sections 271(b) and 271(c), and willful infringement under

4    Section 284 (*see* Compl. ¶¶ 44–77).

5         Align moves to dismiss Dental Monitoring's direct, willful, and indirect infringement

6    claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  This order follows full

7    briefing and oral argument.

**ANALYSIS**

9         To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to

10   relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A

11   claim has facial plausibility when the plaintiff pleads factual content that allows the court to

12   draw the reasonable inference that the defendant is liable for the misconduct alleged."

13   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570).  At the pleading

14   stage, a district court "accept[s] all factual allegations in the complaint as true and construe[s]

15   the pleadings in the light most favorable to the nonmoving party."  *Knievel v. ESPN*, 393 F.3d

16   1068, 1072 (9th Cir. 2005).  A "legal conclusion couched as a factual allegation," however,

17   may be disregarded.  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

18        **1.   DIRECT INFRINGEMENT.**

19        According to Align, Dental Monitoring's allegations of direct infringement fail because

20   (A) the asserted method claims do not result in a product that is made by a patented process, as

21   required for direct infringement under Section 271(g); (B) the steps of the asserted method

22   claims are not performed by, or attributable to, a single entity, as required for direct

23   infringement under Section 271(a); and (C) the complaint does not plausibly allege that each

24   step of the asserted method claims is practiced, as required for direct infringement under the

25   *Iqbal/Twombly* standard.  These arguments will be taken up in turn.

26        **A.   SECTION 271(g).**

27        Section 271(g) provides that "[w]hoever without authority imports into the United States

28   or offers to sell, sells, or uses within the United States a *product* which is *made by a process*

United States District Court
Northern District of California

3

*patented* in the United States shall be liable as an infringer . . . ." (emphasis added).  The

Federal Circuit has recognized that "in order for a product to have been 'made by a process

patented in the United States' it must have been a physical article that was 'manufactured[,]'

and that the production of information is not covered." *Bayer AG v. Housey Pharms., Inc.*,

340 F.3d 1367, 1377 (Fed. Cir. 2003).  A district court must therefore evaluate whether

patented processes "entail the manufacturing of a physical product." *See NTP, Inc. v. Rsch. In

Motion, Ltd.*, 418 F.3d 1282, 1323 (Fed. Cir. 2005).  Dental Monitoring argues that its asserted

claims result in products made by patented processes under Section 271(g).  This order

disagrees.

Consider claim 1 of the '409 patent ('409 patent 32:13–33).  It is directed to a method

that results in the "sending of an information message" about an acquired image that may

guide the operator to acquire another image (*id*. at 32:24).  In other words, it is not directed to

the acquired images themselves, or to the acquisition of such images, but to the *sending* of an

information message "to check whether the analysis image respects the setpoint" (*id*. at 32:31).

Courts have long recognized that the mere transmission of information is not cognizable under

Section 271(g).  *See NTP*, 418 F.3d at 1323; *CNET Networks, Inc. v. Etilize, Inc.*, 528 F. Supp.

2d 985, 995 (N.D. Cal. 2007) (Judge Marilyn Hall Patel).

Even assuming the claimed method does not merely send but "create[s]" an information

message (Compl. ¶ 51), such a message is akin to the sort of digital information that the

Federal Circuit has held is not a manufactured, physical product under Section 271(g), like an

email message.  *See NTP*, 418 F.3d at 1323; *see also Bayer*, 340 F.3d at 1377.  Similarly, claim

15 of the '248 patent is directed to a method that results in the "determin[ation of] a value for

an image attribute" ('248 patent 34:53; *see id*. at 34:43–57; Compl. ¶ 62), and claim 1 of the

'945 patent is directed to a method that results in the "determin[ation of] at least one score"

('945 patent 14:16; *see id*. at 13:59–14:17).  They result in the generation of abstract

information — "a value for an image attribute" or "score" — for "assessing" or "evaluating"

an aligner ('248 patent 34:43, 53; '945 patent 13:59, 14:16).  This too is akin to the sort of

1    digital information that the Federal Circuit has held is not a manufactured, physical product

2    under Section 271(g).[1]

3         In its opposition, Dental Monitoring points to several cases in which district courts have

4    held Section 271(g) can apply to digital information when the claimed method may be

5    "thought of as having a physical, tangible embodiment once it is expressed and stored on

6    computer readable media in the form of magnetic fields on a hard drive or etchings on a CD-

7    ROM." *CNET*, 528 F. Supp. 2d at 994; *see id*. at 994–95; *Ormco Corp. v. Align Tech., Inc.*,

8    609 F. Supp. 2d 1057, 1076–77 (C.D. Cal. 2009) (Judge Christina A. Snyder).  But these cases

9    distinguished those resulting physical, tangible embodiments — an electronic catalog in *CNET*

10   and a 3D digital model of teeth in *Ormco* — from abstract information — research data in

11   *Bayer* and email messages *NTP*.  Our case is more like *Bayer* and *NTP*.

12        In *CNET*, the district court noted that "while practicing each step of the [] method in

13   *Bayer* did not lead to the creation of a drug, practicing each step of the method in this case

14   le[d] directly to the creation of a catalog."  528 F. Supp. 2d at 993.  Meanwhile, the district

15   court in *Ormco* found that practicing each step of the method in that case led directly to the

16   creation of a 3D model of teeth.  609 F. Supp. 2d at 1076.  Practicing each step of the claimed

17   methods of the patents-in-suit, however, leads only to abstract information — the "information

18   message," "value for an image attribute," and "score" — not to the software products that the

19   value of the patents is derived from, which use this information to analyze images and assist

20   dental professionals.  As observed in *CNET*, "[w]hen passing [S]ection 271(g), Congress was

21   concerned about patented processes whose commercial value is derived from the sale of the

22   resulting product."  528 F. Supp. 2d at 995 (citing *Process Patents: Hearing Before the*

---

[1] In its complaint, Dental Monitoring states that claim 1 of the '945 patent creates images of patients' dental arches (Compl. ¶ 73).  But nowhere is image *creation* captured in the claim language, which only provides that at least two images are "acqui[red]" ('945 patent 13:62–14:3).  One limitation provides that an acquired (dentition) image is "conver[ted]" if it is different from the other (aligner) image (*id*. at 14:5), and another limitation "determine[s] . . . for each of a plurality of teeth represented on the . . . images . . . interior and exterior tooth outlines" (*id*. at 14:9–12), but this is all for "comparison of the interior and exterior tooth outlines, so as to determine at least one score according to [the image] comparison" (*id*. at 14:15–17).  The product that is made by the patented process is the score itself.

1   *Subcomm. on Patents, Copyrights and Trademarks of the S. Comm. on the Judiciary*, 99th

2   Cong. 11 (1985)).  The commercial value of the patented processes in this action is not derived

3   from the sale of these abstract figures.

4       *CNET* also emphasized that "the electronic catalog in this case, far from being abstract

5   information or knowledge, is a physical article no different from a product catalog

6   manufactured and assembled on paper bound with stitching, glue or staples."  528 F. Supp. 2d

7   at 994.  Likewise, the court in *Ormco* commented that the "3D digital model of teeth is similar

8   to a plaster or plastic model of teeth."  609 F. Supp. 2d at 1076 n.19.  Here, there are no such

9   physical articles.  The "information message," "value for an image attribute," and "score" have

10  no physical counterparts, a tell-tale sign of their abstractness.

11      Because Dental Monitoring has not plausibly pled direct infringement under Section

12  271(g), Align's motion with respect to the direct infringement claims under Section 271(g) is

13  **GRANTED**.

14          **B.      SECTION 271(a).**

15      Turning to direct infringement under Section 271(a), the statute provides that "whoever

16  without authority makes, uses, offers to sell, or sells any patented invention, within the United

17  States or imports into the United States any patented invention . . . infringes the patent."

18  Infringement under this section requires that all steps of a claimed method "are performed by

19  or attributable to a single entity."  *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d

20  1020, 1022 (Fed. Cir. 2015) (*en banc*).  An actor is responsible for another's performance of

21  method steps when that actor "directs or controls" another's performance, (i) "condition[ing]

22  participation in an activity or receipt of a benefit upon performance of a step or steps of a

23  patented method," and (ii) "establish[ing] the manner or timing of that performance."  *Id.*

24  at 1022–23.[2]

25

26

27  [2] Dental Monitoring confirmed in its opposition that it has not pled the formation of a joint
    enterprise, and was not required to, since there are two ways to find an actor responsible for
28  another's performance of method steps and it has pled direction or control (Opp. 13 (citing
    *Akamai*, 797 F.3d at 1022)).

United States District Court
Northern District of California

1    According to Align, Dental Monitoring fails to plead direct infringement under Section

2    271(a) because some claimed method steps are not performed directly by Align, and Dental

3    Monitoring has failed to plead direction or control over another's performance of those method

4    steps (Reply Br. 7–9; *see also* Br. 15–16).  According to Dental Monitoring, however, its

5    complaint alleges that Align *itself* carries out all of the claimed method steps both

6    "commercially and in testing," which is sufficient for pleading direct infringement under

7    Section 271(a) (Opp. 11–12).  In the alternative, Dental Monitoring asserts that the claimed

8    method steps can be performed by "end-users" of the Invisalign Virtual Care AI platform (*i.e.*,

9    patients) because Align conditions participation in and receipt of treatment upon use of its

10   Invisalign Virtual Care AI platform, and it establishes the manner and timing of the end-users'

11   performance (Opp. 12–13).

12   This order finds that Dental Monitoring has not plausibly pled that Align *itself* carries out

13   the claimed method steps *commercially*.  As Align observes, the complaint makes clear that

14   Dental Monitoring's theory of infringement is premised on the fact that the *patient* takes

15   photos of their own teeth when using the Invisalign Virtual Care AI platform, and that Align

16   does not take these photos (Reply Br. 5 (citing Compl. ¶¶ 32–37)).  The only suggestion to the

17   contrary is a conclusory statement Dental Monitoring points to from the complaint that "the

18   Align App and/or patient must capture various images" (Compl. ¶ 39).  But the statement is

19   itself insufficient to support the theory that Align itself carries out all of the claimed method

20   steps in its day-to-day operations, particularly in light of the complaint's countervailing

21   language.  *Cf. Sentius Int'l, LLC v. Apple Inc.*, 2020 WL 2850286, at *4 (N.D. Cal. June 2,

22   2020) (Judge Yvonne Gonzalez Rogers) ("Devices do not use a method for purposes of patent

23   infringement — people do.").

24   Dental Monitoring has plausibly pled that Align *itself* carries out the claimed method

25   steps in *testing*, however.  Here, unlike in the case that Align cites in support of its arguments,

26   the testing-based allegations were raised in the first instance with respect to each patent-in-suit,

27   and the discussion of infringement was not directed solely toward exclusively post-testing

28   usage (*see* Reply Br. 6 (citing *De La Vega v. Microsoft Corp.*, 2020 WL 3528411, at *4–5

7

(W.D. Tex. Feb. 11, 2020) (Judge Alan D. Albright)).  It bears emphasis that Dental Monitoring will not be able to recover damages for post-testing infringement based on testing-based infringement.  *See De La Vega*, 2020 WL 3528411, at *5 n.7.  What's more, Dental Monitoring will need to offer additional evidence for testing-based infringement to survive a summary judgment motion.  Yet Dental Monitoring has pled it sufficiently to survive a motion to dismiss.

Additionally, Dental Monitoring has (more) plausibly alleged that the claimed method steps may be performed by patients who it directs and controls.  As highlighted in Dental Monitoring's opposition, Align requires patients seeking to use and receive the benefit of the Invisalign Virtual Care AI platform to download its app and capture images for analysis (Opp. 12–13 (citing Compl. ¶¶ 30–37)).  Moreover, Align establishes the manner and timing of the patients' performance, letting them know when it is time to take the next set of pictures for analysis, even going so far as to tell them how to orient their teeth to capture the images necessary for assessment of their treatment progress, with instructions like "Aligners ON, Bite OPEN, Look RIGHT," and "Aligners OFF, Bite CLOSE, Look STRAIGHT" (Opp. 13 (quoting Compl. ¶¶ 38–40)).

Align argues that nothing in the complaint indicates that receiving an Invisalign aligner is conditioned on performing method steps related to the "optional add-on features" of the Virtual Care AI platform (Reply Br. 7–8).  But the benefit offered by the Virtual Care AI platform is not receipt of an aligner, it is improved orthodontic treatment.  Taking photos in the app is not a prerequisite to receiving Invisalign treatment, but it is a prerequisite to receiving the benefits of the Virtual Care AI platform and its improvements.  In order to receive the benefits of the Virtual Care AI platform and its improvements, a patient must use the app and follow its instructions.  That the Virtual Care AI platform is not available to some dentists and orthodontists does not mean that such improved treatment is not conditioned upon performing these steps, as Align suggests (Reply Br. 8).

Because Dental Monitoring has plausibly pled direct infringement under Section 271(a), Align's motion with respect to the direct infringement claims under Section 271(a) is **DENIED**.

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### C.   IQBAL/TWOMBLY STANDARD.

Separately, Align contends that Dental Monitoring's complaint fails to allege a plausible factual basis that Align practices the material claim elements, downplaying the required pleading standard (Br. 17–19).  Dental Monitoring responds that Align wants too much.  This order agrees with Dental Monitoring here.

Align is correct that "a plaintiff cannot assert a plausible claim for infringement under the *Iqbal/Twombly* standard by reciting the claim elements and merely concluding that the accused product has those elements."  *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021).  But a plaintiff is under no obligation to "prove its case at the pleading stage" and "plead infringement on an element-by-element basis."  *Id.* at 1352, 1356 (internal quotation and citations omitted).  Dental Monitoring is only required to provide "a plausible 'short and plain' statement of [its] claim, showing that [it] is entitled to relief," and it has done so.  *Id.* at 1352 (quoting *Skinner v. Switzer*, 562 U.S. 521, 530 (2011)).  In its complaint, Dental Monitoring provides a step-by-step recitation of how the accused platform functions (Compl. ¶¶ 29–43).  It then proceeds to zero in on one claim from each asserted patent and explain, with cross references, how each of the limitations is met using the accused platform (Compl. ¶¶ 46, 57, 68).

According to Align, "in an age where every company claims to be using AI and has its own definition of AI, these nondescript terms" like "neural network" and "AI platform" used in Dental Monitoring's complaint "fall far short of alleging that Align practices the material claim limitations" (Reply Br. 10; *see also* Br. 17–19).  This order is sympathetic to the underlying concern.  That said, Dental Monitoring's position is that it could not supply more detail when information about how Align's Virtual Care AI platform works is only within the possession of Align (Opp. 14).  Dental Monitoring describes the accused platform in sufficient detail to reach discovery.

Because Dental Monitoring has plausibly pled that Align practices the material claim elements, Align's motion with respect to pleading direct infringement under the *Iqbal/Twombly* standard is **DENIED**.

2.        **WILLFUL AND INDIRECT INFRINGEMENT.**

To establish willful infringement under Section 284, a patent owner must prove knowledge of the asserted patents and knowledge of their infringement.  Knowledge of the asserted patents and knowledge of their infringement should be pled with plausibility.  *Sonos, Inc. v. Google LLC*, 591 F. Supp. 3d 638, 643 (N.D. Cal. 2022), *leave to appeal denied*, 2022 WL 1486359 (Fed. Cir. May 11, 2022).  As both forms of indirect infringement under Sections 271(b) and 271(c) also require such knowledge, "[t]he foregoing ground rules concerning the adequate pleading of willful infringement . . . apply with parallel force to the parallel issues for indirect infringement." *Id.* at 647.  Thus, knowledge of the asserted patents and knowledge of their infringement should be pled with plausibility for indirect infringement claims as well. *Ibid.*  According to Align, Dental Monitoring's willful and indirect infringement claims should be dismissed because Dental Monitoring has not plausibly pled that Align had knowledge of the asserted patents, let alone knowledge of their infringement (Br. 19–23).

As made clear in the briefing and at the hearing, both sides are familiar with the Court's relevant prior orders and the need for a notice letter in almost all circumstances (*see* Br. 22–23; Opp. 20 n. 4).  *See also Sonos*, 591 F. Supp. 3d at 644; *Splunk Inc. v. Cribl, Inc.*, 2023 WL 2562875, at *3 (N.D. Cal. Mar. 17, 2023).  The undersigned is of the view that the filing of a complaint cannot, standing alone, serve as notice for purposes of willful and indirect infringement.  According to Dental Monitoring, however, it is not arguing that its complaint alone gave notice but that "the Complaint, coupled with the extensive allegations relating to pre-suit knowledge that were lacking in *Sonos*, [] supports a claim for [willful and] indirect infringement here" (Opp. 20 n.4).  In its requested supplemental briefing, Dental Monitoring explains that "[s]ince 2015, the parties have had at least forty in-person or virtual meetings and exchanged dozens of emails," and that "[t]hroughout 2022 — well after the asserted patents issued and before this suit was filed — top executives of the parties had multiple meetings and conversations during which they discussed [Dental Monitoring]'s AI-assisted products and its patent portfolio" (Supp. Br. 1–2).

Taking Dental Monitoring's factual allegations as true, surely Align was aware that Dental Monitoring had a patent portfolio well before Align was served with Dental Monitoring's complaint.  Apparently, a Dental Marketing executive even reminded Align of this portfolio at a dinner arranged by the parties' executives to discuss a potential partnership on September 6, 2022, mere weeks before Align would announce the launch of the accused Invisalign Virtual Care AI platform on September 28, 2022 (Supp. Br. 2–3).  But knowledge of the existence of a patent *portfolio* does not confer knowledge of individual patents or claims in that portfolio, let alone knowledge of their infringement.

Dental Monitoring asserts that the point of these meetings was to mine Dental Monitoring for information because Align recognized that it was behind the market on remote dental monitoring solutions (Opp. 21).  Time will tell if it is true.  Yet assuming it is true, that Align was aware that Dental Monitoring had a patent portfolio and that Align opted to poach Dental Monitoring's ideas in no way shows that Align pored over Dental Monitoring's patents, learned about the three patents-in-suit, and opted to infringe them.  Likewise, that Align elected not to pore over Dental Monitoring's patents in allegedly poaching its technology does not constitute willful blindness.  Align would not be expected to closely review Dental Monitoring's portfolio under such circumstances.

At the hearing, counsel for Dental Monitoring suggested that the relatively small number patents in Dental Monitoring's portfolio means that a sophisticated player like Align would have known that the poached technology was patented (*see also* Opp. 17–18).  Moreover, according to Dental Monitoring, the fact that many of its 200 patents had yet to issue is immaterial because the patents-in-suit had issued by 2022, before several rounds of meetings between the parties' executives took place (Supp. Br. 1–3).  Still, that does not show Align knew of these three specific patents and their infringement.  Dental Monitoring appears to want the Court to draw a line for how few patents in a portfolio are required to assume that a sophisticated party reviewed them for the purpose of showing knowledge.  The Court declines to do so.  Dental Monitoring was prompt to file this complaint after Align announced the

launch of the accused platform.  It could have, and should have, filed a notice letter at that time.

There is one line in Dental Monitoring's supplemental briefing that gave the Court pause, however.  According to Dental Monitoring, "Align currently owns 971 U.S. patents, and has 1,344 pending U.S. patent applications, and certain [Dental Monitoring] patents have been cited during their prosecution" (Supp. Br. 4).  Dental Monitoring does not say whether these Dental Monitoring patents included the patents-in-suit.  It is unclear whether its silent on this point reflects that it did not do sufficient research or that it did not like what its research uncovered.  If Dental Monitoring seeks leave to amend its complaint, perhaps it will address the issue.

This order reiterates that sending a notice letter is an easy, cost-effective way to establish knowledge and to avoid leaving all of this to guesswork.  The practice of establishing knowledge using a letter that calls out the claims and the alleged infringement should be encouraged to give an alleged infringer a meaningful opportunity to cease infringement or get a license before litigation begins.  Such a letter may provoke a declaratory relief suit in a district of the alleged infringer's choosing, but this does not excuse failure to send one.

In sum, Dental Monitoring's allegations are insufficient to plead knowledge, as required for willful and indirect infringement.  The motion to dismiss as to Dental Monitoring's willful and indirect infringement claims is therefore **GRANTED**.

## CONCLUSION

For the foregoing reasons, Align's motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**.  Specifically, the motion as to direct infringement under Section 271(g), willful infringement under Section 284, and indirect infringement under Sections 271(b) and 271(c) is **GRANTED**.  The motion as to direct infringement under Section 271(a) is **DENIED**.  Align's answer is due in **FOURTEEN DAYS**.

Dental Monitoring may move for leave to amend its complaint.  Such motion must be filed within **FOURTEEN DAYS** and include as an exhibit a redlined version of the proposed amendment that clearly identifies all changes.  This order highlights certain deficiencies, and

merely adding sentences to address these deficiencies may not justify leave to amend.  If
Dental Monitoring moves for leave to amend its complaint, it should be sure to plead its best
case and consider all criticisms made by Align, including those not reached by this order.

The initial case management conference is hereby specially set for **JULY 14, 2023,
at 1:00 P.M.**  The parties should come prepared to discuss the application of the "patent
showdown" procedure to this action (*see* Dkt. No. 16).

**IT IS SO ORDERED.**

Dated:  June 30, 2023.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

United States District Court
Northern District of California